## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-23079-DAMIAN

JONATHAN ALEXANDER GARCIA,

      Plaintiff,

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

      Defendant.

_____/

## ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF NOS. 20 & 22]

THIS CAUSE is before the Court on the parties' Cross-Motions for Summary Judgment, filed April 13 and May 13, 2022. [ECF Nos. 20 and 22]. Plaintiff, Jonathan Alexander Garcia ("Plaintiff" or "Mr. Garcia"), seeks reversal and remand of the decision of the Commissioner of the Social Security Administration ("SSA") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). This matter is before the undersigned pursuant to the parties' Consent to Magistrate Jurisdiction, in which the parties jointly and voluntarily elected to have the undersigned United States Magistrate Judge conduct all further proceedings in this case, including entry of final judgment [ECF No. 21].

THE COURT has reviewed the parties' memoranda [ECF Nos. 20, 22, and 24], the administrative record [ECF No. 12], the pertinent portions of this Court's record, and all relevant authorities and is otherwise fully advised in the premises. For the reasons set forth below, the Court denies Plaintiff's Motion for Summary Judgment [ECF No. 20], grants the Defendant's Motion for Summary Judgment [ECF No. 22], and affirms the decision of the Commissioner.

# I.   BACKGROUND

### A.      Mr. Garcia's Claim For Benefits

Mr. Garcia alleged disability beginning on January 1, 1997, due to autism spectrum disorder, attention deficit disorder or ADD (inattentive type), learning disability, and anxiety. (R. 70, 204–207, 256).[1] Mr. Garcia was three and a half years old on the alleged onset date, and twenty-six at the time of his administrative hearing, such that he falls within the definition of a "younger person" (under age 50). (R. 27, 41); *see also* 20 C.F.R. § 416.963(c).

Mr. Garcia presently lives with his mother, who provides support and goes with him to his medical appointments. (R. 22, 26, 314, 345). He completed high school, where he received special education classes. (R. 22, 257, 323). As of the date of the Commissioner's Decision, Mr. Garcia worked part-time as a fry cook at a local McDonald's earning $8.95 an hour and working two days a week for six hours a day, and he had worked in that same job since March 2013. (R. 22, 42, 248–249, 257, 314, 320).

### B.      Mr. Garcia's And His Mother's Testimony Regarding His Alleged Impairments

On May 13, 2020, Mr. Garcia appeared, represented by counsel, and testified at a telephonic hearing before an Administrative Law Judge ("ALJ"). (R. 41–56). Mr. Garcia testified that he works at McDonald's two days a week, from 9 a.m. to 4 p.m., and earns minimum wage. (R. 42, 44–44). At McDonald's, Mr. Garcia's tasks include cooking fries and putting them in serving containers, taking out the trash, and filling the ice machine by carrying buckets of ice. (R. 42–43, 55). The heaviest he can lift is a garbage bag weighing approximately

---

[1]  All references to "R." refer to the transcript of the Social Security Administration filed on October 12, 2021. [ECF No. 11]. The page numbers listed in this document refer to the bold numbers found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the Court's electronic docketing system or any other page numbers.

100 pounds, and sometimes a co-worker helps him with taking out the trash. (R. 44). Mr. Garcia testified that he "wouldn't mind" working more than two days a week but that he ultimately decided not to because he finds it difficult as he gets "easily anxious," and his general manager can be "too rough," which makes him get "a little nervous." (R. 51). He also testified that his other co-workers are "very nice" and "more compassionate" towards him than the general manager. *Id.* Mr. Garcia testified that he has difficulty working the cash register and serving customers their orders. (R. 43). He stated that he has "observed the difficulties of using a cash register and taking orders" and that some customers can be "demanding and very belligerent." (R. 54–55).

Mr. Garcia also testified that he took three regular classes in high school and the rest were "a special type of classes." (R. 46). After completing high school, he briefly attended a vocational school, but he left because "it was too hard" for him and he experienced more social anxiety than at his job. (R. 52). Mr. Garcia passed the test to be eligible for a driver's license. (R. 53). He testified that his math skills are "50/50," and he is "not that good with multiplying or dividing," but he likes geometry. (R. 22, 52, 56).

As for his social life, Mr. Garcia stated, "I honestly don't have much friends" and "that is why I have to do things – do things alone." (R. 46). Mr. Garcia testified that he sometimes visits one friend about the same age as him, and they talk about general things like "combatting stress," and the friend is showing him how to fix and ride a bicycle. (R. 47).

During a typical day, Mr. Garcia makes his own breakfast and then watches YouTube videos of his favorite movies and channels on his tablet and then writes notes about ideas he gets based on research he does online, including how to "join a sports team" and how to find people who could be a friend and share a common interest with him. (R. 48–49). Mr. Garcia testified that he takes a neural optimizer and vitamins as well as melatonin and "lavender-

type tea" to help him sleep, but he does not take any prescription medication. (R. 47, 54). He has not seen his doctor in a couple months. (R. 47).

Mr. Garcia's mother briefly testified at the hearing before the ALJ about her son's medical care. (R. 57–61). She testified that she accompanies Mr. Garcia to his doctor appointments and that he sees Dr. Carcache every month at FIU Medical Center. (R. 58). His mother stated that Mr. Garcia does not have insurance and that she pays for the visits with Dr. Carcache. *Id.* She testified that "for many years," Mr. Garcia used to go to the psychiatrist or psychologist, he saw a therapist while in school, and "since he was little," he had speech therapy, occupational therapy, eye therapy, and psychology sessions. *Id.* According to Mr. Garcia's mother, she "cannot help [her son] with everything that he needs." (R. 59).

### C.      *Other Lay Evidence*

Mr. Garcia's cousin, Jose Lopez Casanova, submitted an unsworn letter, dated December 1, 2019, for the ALJ's consideration. (R. 312). In the letter, Mr. Casanova indicates that he has known Mr. Garcia since he was born. *Id.* He also states that he sees Mr. Garcia once a month and that they usually go to the movies or get something to eat. *Id.* According to Mr. Casanova, Mr. Garcia "likes to stick to a routine" and "doesn't like big crowds, meeting new people or doing different things." *Id.* Mr. Casanova's letter indicates that Mr. Garcia "seems to lack basic communication and social skills to effectively interact with others" and, at times, also "has difficulty regulating his emotions." *Id.* Mr. Casanova also writes that Mr. Garcia is "unable to hold a conversation, maintain normal eye contact or read social cues." *Id.*

**D.       *Relevant Medical Evidence And Expert Opinions Regarding Mr. Garcia***

The record contains limited treatment notes from doctors and other professionals regarding Mr. Garcia's condition. Below is a non-exhaustive summary of the relevant medical evidence and expert opinions regarding Mr. Garcia's alleged impairments, as well as the opinion of the impartial vocational expert.

**1.       Dr. Ludwig's Opinion And Evaluations**

Dr. Robert Ludwig, Psy.D., a clinical psychologist, conducted two evaluations of Mr. Garcia, in 2014 and 2019, and provided five therapy sessions in 2015. (R. 322–327, 371–372).

Dr. Ludwig first conducted an evaluation on February 24, 2014, upon referral by the Office of Vocational Rehabilitation, to assess Mr. Garcia's current levels of cognitive, academic, and emotional functioning (the "2014 Evaluation"). (R. 323–327). Mr. Garcia was accompanied by his mother. (R. 323). In the 2014 Evaluation, Dr. Ludwig reported that Mr. Garcia graduated from high school with a regular diploma after attending ESE classes. *Id.* According to Dr. Ludwig, Mr. Garcia stated that he has "ADHD" and was on the "autistic spectrum," and he expressed an interest in attending a vocational school to study welding. *Id.* Dr. Ludwig also indicated that Mr. Garcia's mother reported that he tried to attend Miami-Dade College but got discouraged because of his low math and reading scores, and he "gave up" because he had to take remedial classes. *Id.*

Dr. Ludwig's 2014 Evaluation indicates that Mr. Garcia was prescribed psychostimulant medication that was later discontinued because he "got depressed" and that Mr. Garcia's mother stated that Mr. Garcia was seeing a psychiatrist who wanted to prescribe medication to treat his anxiety and help him sleep. (R. 323). Mr. Garcia had no medical

conditions and denied using alcohol or psychoactive substances and stated that he does not feel depressed but acknowledged feeling anxious. *Id.*

As for behavioral and mental status, Dr. Ludwig indicated in the 2014 Evaluation that Mr. Garcia was "somewhat awkward in presentation totally lacking in verbal spontaneity [and] speaking only when spoken to." (R. 324). Mr. Garcia maintained a "rather rigid posture and was casually but neatly attired and groomed." *Id.* His thought associations were "coherent, logical but concrete." *Id.* Dr. Ludwig reported that Mr. Garcia had a noticeable speech impediment, "thus[,] expressive communication was at times difficult" for him. Mr. Garcia's attention and concentration were "variable," and, on several occasions, he needed repetition of oral instruction. His problem solving was "mostly by trial and error," and he worked at a "below average manipulative rate of speed." *Id.* Mr. Garcia scored in the low average range of intelligence with a full-scale IQ of 81, within the tenth percentile. *Id.* Dr. Ludwig also reported that Mr. Garcia's thoughts were "fairly concrete and he appears self-conscious" and his "speech difficulties further undermine his self-esteem," and Dr. Ludwig opined that Mr. Garcia "should never be placed in an employment position where he is interdependent upon others for job success." (R. 325, 327). According to Dr. Ludwig, Mr. Garcia "may have difficulty interacting with peers, coworkers or supervisors." *Id.* at 327.

As relevant here, Dr. Ludwig performed another psychological evaluation of Mr. Garcia on December 5, 2019 (the "2019 Evaluation"). (R. 371–372). In the 2019 Evaluation, Dr. Ludwig diagnosed Mr. Garcia with autism spectrum disorder, attention deficit hyperactivity disorder, and moderate anxiety and reported that Mr. Garcia has "low frustration tolerance, illogical thinking[,] and is quasi-delusional." (R. 372). The 2019 Evaluation also indicates that Mr. Garcia has "deficits in social communication, in anticipating and planning, problems with nonverbal communication and difficulty in

6

understanding relationships." *Id.* Dr. Ludwig stated that Mr. Garcia attempted to attend college but was unsuccessful, and he will need the support of his mother. He also indicated that Mr. Garcia "has actually deteriorated since last seen four years ago." On the other hand, Dr. Ludwig acknowledged that Mr. Garcia has been able to work part-time two days a week, on the weekend, under the same supervisor at McDonald's. According to Dr. Ludwig, "this is the optimal level of functioning that one can expect from" Mr. Garcia, but he "does not appear to be gainfully employable." *Id.* Dr. Ludwig suggested that "some type of sheltered employment would be possible in the future" and "[s]tricter compliance with psychotropic medication may be helpful." *Id.*

### 2. Dr. Carcache's Opinion And Examinations

Mr. Garcia was treated by Dr. Luis M. Carcache, M.D., at the FIU Health Faculty Group Practice, from August 2015 to November 2018. (R. 329–362, 367–369, 377–381). Dr. Carcache indicated that during the initial evaluation on August 20, 2015, Mr. Garcia reported anxiety, concentration, and sleep as his chief complaints. (R. 353). Mr. Garcia also indicated that he was taking Trazodone for the past two months, as prescribed by a prior psychiatrist, and that he was sleeping better with the medication. *Id.* Mr. Garcia was working at McDonald's for the past two years and expressed that he "feels anxious about career choices and his future." *Id.* Dr. Carcache diagnosed Mr. Garcia with autism spectrum disorder, ADHD, and unspecified anxiety disorder. (R. 356). He prescribed Adderall to target Mr. Garcia's ADHD and continued Trazodone to address his sleep issues. *Id.*

At a follow-up visit in October 2015, Mr. Garcia told Dr. Carcache that he "worries about things all the time" and "feels that anxiety is overwhelming at times." (R. 349). Dr. Carcache reported that Mr. Garcia was cooperative and that his thought process was

coherent. (R. 349–350). Dr. Carcache added unspecific intellectual disabilities to his prior diagnoses and prescribed Sertraline to target Mr. Garcia's anxiety. (R. 351).

A treatment note from a December 2015 follow-up visit with Dr. Carcache indicates that Mr. Garcia was prescribed Focalin, as an alternative to Adderall, to target his ADHD. (R. 345). Mr. Garcia reported feeling "less anxious with sertraline use," and his mother also reported "a positive difference with sertraline use." (R. 345). A later treatment note from February 2016 indicates that Mr. Garcia was about to start taking classes at Miami-Dade College (MDC), and he reported feeling "a bit anxious" to start school but "looking forward to it." (R. 341).

A year later, during a follow-up visit with Dr. Carcache in May 2016, Mr. Garcia reported "doing well" and that he was working at McDonald's on the weekend and going to MDC "taking three classes[:] reading, writing[,] and computers." (R. 337). Dr. Carcache specified that Mr. Garcia was "doing well overall" and that he was going to therapy and to the gym two to three times per week. *Id.* A treatment note from a follow-up in November 2016 indicates that Mr. Garcia was no longer going to MDC "due to financial aide difficulties," and that he was no longer going to the gym or attending therapy since he was no longer in school. (R. 333). Mr. Garcia reported having problems with falling asleep and requested to change his sleep medication because he felt that Trazodone "was too strong even at half dose." *Id.* Dr. Carcache prescribed Gabapentin to address Mr. Garcia's sleep and anxiety problems. (R. 334).

During Mr. Garcia's last follow-up visit in May 2018, Dr. Carcache reported that Mr. Garcia "ran out" of his medication, was taking Sertraline "sporadically," and was having "difficulty focusing without adderall use." (R. 367). Mr. Garcia's mother, who was also present, reported that Mr. Garcia "obsesses with things" and that "sertraline helps with [his]

8

anxiety." *Id.* Mr. Garcia indicated that he was "not sleeping well without trazodone use," and his mother suggested she would like Mr. Garcia "to resume [his] med[ication] regimen." *Id.* Dr. Carcache added insomnia and overweight to Mr. Garcia's diagnoses. (R. 369).

In November 2018, Dr. Carcache completed a Mental Status Examination and Medical Report, requested by Florida Highway Safety and Motor Vehicles, on behalf of Mr. Garcia for his driver's license application. (R. 382–386). Dr. Carcache reported Mr. Garcia's autism spectrum, ADHD, and anxiety diagnoses and difficulty with social interactions but did indicate that Mr. Garcia can operate a motor vehicle safely. (R. 383–386).

### 3.  Dr. Brown's Opinion

In August 2018, a non-examining state agency consultant and psychologist, James G. Brown, Ph.D., found that Mr. Garcia had a severe impairment of autism spectrum disorder and non-severe impairments of anxiety, ADHD, and intellectual disorder. (R. 73, 83). Dr. Brown opined that Mr. Garcia was able to understand and recall short and simple instructions, had a moderate impairment in his ability to cope with changes on the job, and did not have a mental impediment preventing his ability to work a full-time simple, routine, and repetitive ("SRRT") job. (R. 75–76, 85–86).

### 4.  Vocational Expert Testimony

At the hearing before the ALJ, an impartial vocational expert ("VE") testified that Mr. Garcia's past work was not substantial gainful activity because it seemed like a "sheltered, accommodated employment" since "he only worked 14 hours a week." (R. 62). Nonetheless, the VE classified Mr. Garcia's past work at McDonald's as a "cook helper" performed at the "heavy/very heavy exertional level." *Id.*

The ALJ first asked the VE whether jobs exist in significant numbers in the national economy for a person with Mr. Garcia's same age, education, and vocational history "or lack thereof," who is able to function with no exertional, manipulative, postural or environmental limitations, and able to perform simple, routine, repetitive tasks at "reasoning level 1." (R. 63). The VE testified that such person cannot perform Mr. Garcia's past work as a cook helper because it exceeds "reasoning level 1." *Id.* The VE provided three representative occupations such a person could perform, including medium unskilled jobs as a floor waxer and wall cleaner, and light unskilled jobs as a housekeeping/cleaner. (R. 63–64).

The ALJ then asked, based on the preceding hypothetical, whether jobs exist for such a person who "can only have frequent interaction with supervisors, frequent interaction with co-workers, and occasional interaction with the general public." (R. 64). The VE testified that such person would still be able to perform the three jobs previously identified. *Id.* When asked by the ALJ to assume such person can have "no interaction with the general public," the VE testified that the floor waxer and wall cleaner jobs would remain, but the housekeeping/cleaner job would be reduced by 50%. (R. 65). Additionally, the VE stated that if the person was off task 20% of an eight-hour workday, all jobs identified at "reasoning level 1" would be eliminated, and if the person was off task 20% or more during a workday while working independently or without close supervision, all work would be precluded. (R. 66–67).

## II.      PROCEDURAL HISTORY

Mr. Garcia applied for DIB and SSI benefits on March 15, 2018. (R. 204–07). His application was initially denied on August 10, 2018, and again, upon reconsideration on November 19, 2018.  (R. 113–18, 127–138). Mr. Garcia then requested a hearing, which was held before the ALJ on May 13, 2020. (R. 36). On May 22, 2020, the ALJ issued a decision

finding that Mr. Garcia was not disabled under Section 1614(a)(3)(A) of the Social Security Act from January 1, 1997, through the date of the decision (the "Decision"). (R. 16, 28–29). Mr. Garcia requested review of the ALJ's Decision. (R. 1–3). On June 23, 2021, the Appeals Council denied his request for review, rendering the ALJ's Decision as the Commissioner's "final" determination. *Id. See* 42 U.S.C. § 405(g); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

Having exhausted his administrative remedies, on August 25, 2021, Mr. Garcia filed a Complaint seeking judicial review of the Decision. [ECF No. 1]. *See* 42 U.S.C. § 405(g). The administrative record was filed on December 6, 2021. [ECF No. 12]. Thereafter, Mr. Garcia filed a Motion for Summary Judgment on April 13, 2021. [ECF No. 20]. Defendant, Kilolo Kijakazi, Acting Commissioner of the SSA ("Defendant" or the "Commissioner"), filed a Motion for Summary Judgment and Response to Plaintiff's Motion for Summary Judgment on May 13, 2022. [ECF No. 22]. Mr. Garcia then filed his Reply Brief on June 14, 2022. [ECF No. 25].

Both parties' Motions are fully briefed and ripe for adjudication.

### III.      THE SEQUENTIAL EVALUATION PROCESS

Eligibility for SSI benefits requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E), 1382c(a)(3)(A)–(B). A claimant is disabled if he is unable to engage in substantial gainful activity by reason of a medically determinable impairment that can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *Bacon v. Comm'r of Soc. Sec.*, 861 F. App'x 315, 317 (11th Cir. 2021). A plaintiff bears the burden of proving he is disabled within the meaning of the Social Security Act. 20 C.F.R. §§ 416.912(a), (c).

Here, the ALJ concluded that Mr. Garcia is not disabled under Section 1614(a)(3)(A) of the Social Security Act based on the five-step sequential evaluation process that must be applied to determine whether a claimant is disabled. (R. 28). *See* 20 C.F.R. § 416.920(a)(1); *Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015).

At step one of this process, the ALJ must determine whether the claimant is unable to engage in substantial gainful activity ("SGA"). *See* 20 C.F.R. § 416.920(b). SGA is defined as work activity that is both substantial and gainful. 20 C.F.R. § 416.972(a). Generally, if a claimant's labor earnings are above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA. 20 C.F.R. § 416.974–.975. If a claimant can engage in SGA, the ALJ will find that he is not disabled. 20 C.F.R. § 416.971.

At step two, the ALJ must determine whether the claimant has a severe medically determinable mental or physical impairment ("MDI") or a combination of impairments. 20 C.F.R. § 416.920(c). An impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to perform basic work activities. *Id.* If the claimant does not have an MDI or combination of impairments that is severe, he is not considered disabled. *Id.*

At step three, the ALJ must determine whether the claimant's impairment or combination of impairments is of a severity that meets or medically equals the criteria of an impairment listed in Appendix 1 to Subpart P of Part 404, Title 20 of the Code of Federal Regulations. 20 C.F.R. §§ 416.920(d), 416.925–.926. If so, the claimant is disabled. *Id.* If not, the analysis proceeds to the next step. *Id.* Before considering step four, however, the ALJ must first determine the claimant's Residual Functional Capacity ("RFC"). 20 C.F.R. § 416.920(e). A claimant's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. § 416.945. The ALJ must make this

determination while stating "with particularity the weight given to different medical opinions and the reasons therefor." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1321 (11th Cir. 2021) (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011)).

At step four, the ALJ must determine whether the claimant can perform his past relevant work, in light of his RFC. 20 C.F.R. § 416.920(f). Past relevant work means work performed (either in the manner claimant actually performed it or as it is generally performed in the national economy) within 15 years prior to the date claimant's disability must be established. 20 C.F.R. § 416.960(b)(1). If the claimant has the RFC to do his past relevant work, he is not disabled. 20 C.F.R. § 416.920(f). If the claimant is unable to do any past relevant work, the analysis proceeds to the final step.

At the fifth and final step, the ALJ must determine whether the claimant is able to do any other work considering his RFC, age, education, and work experience. 20 C.F.R. § 416.920(g). If the claimant can do other work, he is not disabled. *Id.* If he is unable to do other work, he is disabled. *Id.* At step five, the burden temporarily shifts to the Commissioner to show the existence of other jobs in significant numbers in the national economy that the claimant can perform, given his impairments. 20 C.F.R. §§ 416.912, 416.960(c). The ALJ makes this determination by considering both the Dictionary of Occupational Titles and testimony from an impartial vocational expert. *See Buckwalter*, 5 F.4th at 1321.

## IV.        THE ALJ'S FINDINGS

Applying the foregoing sequential evaluation process to Mr. Garcia's claim for benefits, the ALJ found that: (1) Mr. Garcia has not engaged in SGA since the alleged onset date of January 1, 1997, as his current work activity at McDonald's does not rise to the level of SGA; (2) his "autism spectrum disorder; attention deficit hyperactivity disorder;

intellectual disorder; and anxiety disorder" are severe impairments; however, (3) his combination of impairments do not meet or medically equal the listings under sections 12.05, 12.06, and 12.10. (R. 18–19).

Specifically, the ALJ found moderate limitations in Mr. Garcia's ability to understand, remember, or apply information, based on the evaluations and mental status examinations of his psychiatric providers. *Id.* at 19. The ALJ also found that Mr. Garcia was moderately limited in his abilities to interact with others and to maintain concentration, persistence, and pace. *Id.* The ALJ noted that Mr. Garcia's psychiatric providers found that he had a cooperative attitude, concrete thinking, and good judgment. *Id.* Lastly, the ALJ found that Mr. Garcia was mildly limited in his ability to adapt and manage himself, based on the mental status examinations indicating that Mr. Garcia maintained a well-groomed appearance and was appropriately dressed and based on evidence of his work activity at McDonald's since 2013. (R. 20).

At step four, in determining Mr. Garcia's RFC, the ALJ found that Mr. Garcia could perform a full range of work at all exertional levels but with some nonexertional limitations. (R. 21). The ALJ stated that Mr. Garcia could perform simple, routine, and repetitive tasks and can only perform jobs within "reasoning level 1." *Id.* The ALJ also found that Mr. Garcia could tolerate "frequent interaction with supervisors and coworkers and no interaction with the general public." *Id.*

As to the medical opinions, the ALJ found certain portions of Dr. Ludwig's opinion "somewhat persuasive" as they were supported by the medical evidence in the record. (R. 25–26). However, the ALJ disagreed with Dr. Ludwig's opinion that Mr. Garcia might have difficulty interacting with peers, coworkers, or supervisors. *Id.* at 25. Specifically, the ALJ found that Mr. Garcia can have frequent interaction with supervisors and coworkers in light

of the mental status examinations documenting Mr. Garcia's cooperative attitude and his work activity at McDonald's since 2013. *Id.*

Similarly, the ALJ found the portion of Dr. Ludwig's opinion regarding Mr. Garcia's social functioning and communication abilities "somewhat persuasive" as it is consistent with the medical evidence in the record. On the other hand, the ALJ found the remainder of Dr. Ludwig's opinion, including that Mr. Garcia does not appear to be gainfully employable, that without his mother's support he would be homeless and unable to work at all, and that perhaps some type of sheltered employment would be possible in the future, "not persuasive" as it is inconsistent with the evidence of Mr. Garcia's work activity at McDonald's since 2013, as well as evidence of his reported activities of attending college classes and going to the gym in May 2016. (R. 26).

As to step five of the sequential process, the ALJ found that Mr. Garcia has no past relevant work, but that he could perform other jobs that exist in significant numbers in the national economy, including floor waxer, wall cleaner, and housekeeping cleaner. (R. 27–28). Therefore, the ALJ determined that Mr. Garcia was not disabled under Section 1614(a)(3)(A) of the Social Security Act at any time from January 1, 1997, through May 22, 2020, the date of the ALJ's Decision. (R. 28).

## V.     ISSUES RAISED IN THE PARTIES' MOTIONS

In his Motion for Summary Judgment, Mr. Garcia asserts four challenges to the ALJ's Decision: (1) the ALJ's reasons for finding the opinions of Dr. Ludwig unpersuasive are not supported by substantial evidence; (2) the ALJ committed reversible error in failing to provide any reasons for his implicit rejection of the lay evidence in the record from Mr. Garcia's cousin; (3) the ALJ's reasons for discrediting Mr. Garcia's testimony are not based on

substantial evidence; and (4) the Commissioner failed to sustain her burden of establishing

that there is other work in the national economy that Mr. Garcia can perform. [ECF No. 20].

Based on these challenges, Mr. Garcia argues that the ALJ's Decision should be

reversed and remanded with instructions to (1) reassess Dr. Ludwig's opinion; (2) reassess

Mr. Garcia's RFC, properly considering the lay and medical opinions of record; (3) reassess

Mr. Garcia's subjective complaints; (4) obtain new vocational witness testimony and pose a

complete hypothetical question to the vocational witness; and (5) issue a new decision

supported by substantial evidence and proper legal standards. *Id.* at 19.

In response to Mr. Garcia's Motion for Summary Judgment, the Commissioner filed

a Cross-Motion for Summary Judgment and argues that the ALJ's Decision should be

affirmed because substantial evidence supports it. *See* [ECF No. 22].

## VI.      APPLICABLE LEGAL STANDARDS[2]

This Court's review of the ALJ's Decision is limited to determining whether the

Decision is supported by substantial evidence and whether the correct legal standards were

applied. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis

v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)). Substantial evidence is more than a scintilla

but is less than a preponderance. *Id.* (citations omitted); *Moore v. Barnhart*, 405 F.3d 1208,

1211 (11th Cir. 2005). It is such relevant evidence that a reasonable person would accept as

adequate to support a conclusion. *Buckwalter*, 5 F.4th at 1320. A court must defer to the ALJ's

decision if it is supported by substantial evidence, even if the preponderance of the evidence

weighs against it. *Id.* The Court may not redecide facts, reweigh the evidence, or substitute its

---

[2] The standard of review in SSI cases is the same as the standard for DIB cases. 42 U.S.C. §
1383(c)(3). Consequently, the case law addressing DIB cases is generally applicable to SSI
cases.

judgment for that of the ALJ. *Id.* Although factual findings enjoy such deference, the ALJ's legal analysis and conclusions are reviewed *de novo. Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

## VII.   DISCUSSION

Mr. Garcia's challenges to the ALJ's decision are addressed below.

### A.  Whether The ALJ Properly Evaluated Dr. Ludwig's 2019 Opinion

Mr. Garcia asserts that the ALJ improperly discredited the medical opinion of his treating psychologist, Dr. Ludwig. (Mot. at 10–13). Specifically, Mr. Garcia argues that the ALJ's reasons for not fully crediting the 2019 opinion of Dr. Ludwig are not supported by substantial evidence. Additionally, Mr. Garcia avers that when assessing his RFC, the ALJ failed to account for Dr. Ludwig's finding that he had "deficits in social communication, in anticipating and planning, problems with nonverbal communication and difficulty in understanding relationships" and, therefore, remand is necessary. *Id.* at 12. According to Mr. Garcia, Dr. Ludwig's finding regarding his social and communication limitations "directly conflict" with the ALJ's finding that Mr. Garcia can "frequently" interact with supervisors and co-workers. *Id.* In response, the Commissioner asserts the ALJ properly determined that portions of Dr. Ludwig's opinions were not persuasive, within the meaning of the revised medical evidence regulations, as those parts were not consistent with the evidence of record. Resp. at 8.

As noted above, a disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A medical source's

17

opinion that a claimant is "disabled" or "unable to work" is not dispositive of a disability claim because the disability determination is reserved to an ALJ acting on behalf of the Commissioner. *Walker v. Comm'r of Soc. Sec.*, 987 F.3d 1333, 1339 (11th Cir. 2021). Moreover, the ALJ need not discuss every piece of evidence in his or her decision. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam).

For claims filed on or after March 27, 2017, the SSA's new regulations apply. *See Matos v. Comm'r of Soc. Sec.*, No. 21-11764, 2022 WL 97144, at *4 (11th Cir. Jan. 10, 2022) (citing 20 C.F.R. § 404.1520c). This new regulatory scheme no longer requires the ALJ to either assign more weight to medical opinions from a claimant's treating source or explain why good cause exists to disregard a treating source's opinion. *Id.* Under the new regulations, an ALJ should focus on the persuasiveness of medical opinions and prior administrative medical findings by looking at five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. *Id.* § 404.1520c(c)(1)–(5). The ALJ may, but is not required to, explain how he considered factors other than supportability and consistency, which are the most important factors. *Id.* § 404.1520c(b)(2). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1). And "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2).

As explained above, the Court's role is limited to determining whether substantial evidence supports the ALJ's determination that Mr. Garcia was not disabled. The Court has undertaken a thorough review of the record and finds that the ALJ's determination is supported by substantial evidence based on considerations of the consistency and supportability of the medical opinion evidence in accordance with the SSA's new regulatory scheme. Additionally, the ALJ's decision to give certain portions of Dr. Ludwig's opinion less weight is also supported by substantial evidence. The record reflects that the ALJ carefully considered the 2019 Evaluation and medical opinion of Dr. Ludwig and how his medical opinion fits with the record as a whole. *See Levie v. Berryhill*, 757 F. App'x 834, 836 (11th Cir. 2018). The ALJ ultimately found that objective medical evidence and non-medical evidence in the record, including Mr. Garcia's daily activities and work history at McDonald's, were not consistent with the opinion of Dr. Ludwig, who suggested a more restrictive view of Mr. Garcia's abilities.

Specifically, the ALJ pointed to evidence in the record demonstrating that, in addition to performing regular daily activities, Mr. Garcia was able to attend some college classes, go to the gym two or three times a week, and consistently work part-time at McDonald's during his alleged disability period. (R. 24–25). *See, e.g.*, *Prunty v. Acting Comm'r of Soc. Sec. Admin.*, 635 F. App'x 757, 759 (11th Cir. 2015) (holding that substantial evidence supported the ALJ's finding that the claimant lacked sufficient deficits in adaptive functioning, as shown by her abilities to cook simple meals, do household chores, drive a car by herself, take care of a dog, and work part-time at McDonald's).

The ALJ also noted that Dr. Ludwig's own medical evaluations reflect that Mr. Garcia was "casually but neatly attired and groomed" and that his thought associations were "coherent, logical but concrete." (R. 324). Dr. Ludwig also reported there is "no indication

19

of learning disability." (R. 326). The treatment notes and mental status examination in the record from Dr. Carcache also indicate that Mr. Garcia was alert, cooperative, and coherent. He was appropriately conversant with a friendly attitude, had concrete thought process, and good judgment and insight. Dr. Carcache also reported that Mr. Garcia had no delusional thinking or hallucinations, and he was appropriately dressed and well groomed. (R.  19–20, 23–27, 329, 333, 337–338, 341–342, 345–346, 349–350, 355, 377, 383–384). And Mr. Garcia's Function Report from May 2018 indicates that he continued to engage in activities of daily living, including making breakfast, cleaning, doing laundry, going to the gym, helping his mother with grocery shopping and with cooking, reading, watching television, and using the computer. (R. 263–270).

Thus, the ALJ's finding that certain portions of Dr. Ludwig's opinion were unpersuasive and inconsistent with the overall record is supported by substantial evidence and the ALJ sufficiently explained the bases for his findings, consistent with the SSA's new regulations. *See Matos*, 2022 WL 97144, at *4. Therefore, the Court finds that Mr. Garcia has not demonstrated that the ALJ's reasons for finding portions of the opinions of Dr. Ludwig unpersuasive are not supported by substantial evidence, and Mr. Garcia's Motion for Summary Judgment on this ground must be denied.

### B. Whether The ALJ Properly Considered The Lay Evidence Submitted By Mr. Garcia's Cousin When Determining His RFC

Mr. Garcia argues the ALJ committed reversible error in failing to address the letter submitted by Mr. Casanova, Mr. Garcia's cousin, in assessing Mr. Garcia's RFC. *See* Mot. at 13–15. According to Mr. Garcia, this error is not harmless because Mr. Casanova's letter addresses Mr. Garcia's limited social interactions and directly conflicts with the ALJ's findings that Mr. Garcia can frequently interact with supervisors and co-workers. *Id.* at 15.

The Commissioner concedes the ALJ did not discuss Mr. Casanova's letter in his Decision but argues that remand is not warranted because Mr. Garcia has not shown that the lay evidence was material to the ALJ's analysis or conclusions in his disability claim. Resp. at 13–14. In addition, the Commissioner contends that Mr. Casanova's letter included similar allegations to other evidence in the record that the ALJ did discuss, including observations regarding Mr. Garcia's mental impairments and limited social functioning skills. *Id.*

The SSA Regulations require, when assessing a claimant's RFC, that the ALJ's determination be "based on all the relevant evidence in [the claimant's] case record," including not only medical evidence and medical source statements, but also "descriptions and observations of [the claimant's] limitations . . . provided by [the claimant], [or the claimant's] family, neighbors, friends, or other persons." 20 C.F.R. §§ 404.1545(a)(1) and (a)(3), §§ 416.945(a)(1) and (a)(3); *see also* SSR 96–8p, 61 Fed. Reg. 34474, 34477 (July 2, 1996) ("SSR 96–8p") (advising that the RFC assessment must consider all relevant evidence, including medical history, medical evaluations, daily activities, and lay evidence).

Here, although the ALJ did not specifically discuss Mr. Casanova's letter in the Decision, his failure to do so does not warrant remand. The ALJ's Decision reflects that Mr. Casanova's letter, which essentially corroborated Mr. Garcia's complaints, substantially overlapped with Mr. Garcia's subjective complaints. As further discussed below, the ALJ explicitly rejected Mr. Garcia's subjective complaints as inconsistent with the evidence in the record. (R. 24–25). Thus, although he does not explicitly reject Mr. Casanova's statements in the letter, the ALJ's rejection may be implied from his rejection of Mr. Garcia's own complaints of the same nature. *See, e.g.*, *Carter v. Astrue*, 228 F. App'x 967, 969 (11th Cir. 2007) ("We do not require an explicit finding about credibility; instead findings may be by implication if they are 'obvious to the reviewing court.'"). Because the ALJ's rejection of Mr.

21

Casanova's unsworn letter was implicit in the ALJ's explicit rejection of Mr. Garcia's subjective testimony, the ALJ's failure to expressly discuss the letter was not error. *See Osborn v. Barnhart*, 194 F. App'x 654, 666 (11th Cir. 2006) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1254–55 (11th Cir. 1983)) ("Even if the ALJ fails to make an explicit credibility determination as to a family member's testimony or statements, . . . we will not find error if the credibility determination was implicit in the rejection of the claimant's testimony."); *see also Carter*, 228 F. App'x at 969 (affirming an ALJ's decision in which the ALJ implicitly determined that plaintiff's co-worker's unsworn statement, which duplicated and corroborated plaintiff's subjective complaints and testimony, was not credible since the ALJ explicitly found that plaintiff's testimony was not credible).

Accordingly, the Court finds that the ALJ's failure to provide reasons for the implicit rejection of Mr. Garcia's cousin's letter is not reversible error and Mr. Garcia's Motion for Summary Judgment on this ground must be denied.

### C. Whether The ALJ Properly Evaluated Mr. Garcia's Subjective Testimony Regarding His Disabling Mental Symptoms

Mr. Garcia next argues that the ALJ improperly found that his testimony regarding disabling mental symptoms was inconsistent with the objective medical evidence and other non-medical evidence in the record. *See* Mot. at 16–18. Specifically, Mr. Garcia argues that the ALJ's findings that his allegations of disabling mental symptoms are inconsistent with the mental status examinations, the evidence of his part-time work at McDonald's since 2013, his graduation from high school with a regular diploma, obtaining a driver's license, attending college, and going to the gym 2 to 4 times per week (R. 24–25), are not supported by substantial evidence. *Id.* In response, the Commissioner argues the ALJ properly evaluated Mr. Garcia's testimony, as shown by the ALJ's citation to the relevant Regulation (20 C.F.R.

§ 404.1529) and consideration of Mr. Garcia's subjective complaints in relation to the evidence, and articulated reasons for finding the subjective complaints inconsistent with the record. Resp. at 15.

In *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991), the Eleventh Circuit established the standard for evaluating a claimant's subjective complaints. Pursuant to *Holt*, the claimant must show: (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged symptoms or the restriction arising therefrom, or (3) the objectively determined medical condition is such that it can reasonably be expected to give rise to the claimed restriction. *Id.*

"When evaluating a claimant's subjective symptoms, the ALJ must consider things such as (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." *Davis v. Astrue*, 287 F. App'x 748, 760 (11th Cir. 2008) (citing 20 C.F.R. § 404.1529(c)(3)(i)–(vi)). After considering the claimant's subjective complaints, "the ALJ may reject them as not credible, and that determination will be reviewed for substantial evidence." *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (citing *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984)). When discrediting a claimant's subjective allegations of disabling symptoms, the ALJ must articulate "explicit and adequate" reasons for doing so, or "the implication must be so clear as to amount to a specific credibility finding." *Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995). The ALJ must consider "all evidence, including subjective statements about the intensity, persistence, and functionally limiting effects of pain [as well as] the objective medical evidence, laboratory findings and statements from treating or nontreating sources about how the symptoms affect the claimant in deciding the issue of

disability." *Jarrell v. Comm'r of Soc. Sec.*, 433 F. App'x 812, 814 (11th Cir. 2011) (citing 20 C.F.R. § 404.1529(c)(4)).

"Credibility determinations are, of course, for the [ALJ], not the courts." *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985). Moreover, this Court is required to uphold the ALJ's credibility determination if it is supported by substantial evidence. *Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980).[3] As the Eleventh Circuit explained:

> Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court. The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.

*Dyer*, 395 F.3d at 1210–11 (internal quotation marks and citations omitted).

After reviewing the evidence, including Mr. Garcia's subjective complaints regarding his disabling mental symptoms, the ALJ found that Mr. Garcia's "medically determined impairments could reasonably be expected to cause the alleged symptoms," but the ALJ concluded that Mr. Garcia's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. 24). The ALJ articulated his reasons for not crediting Mr. Garcia's testimony regarding the intensity, persistence, and limited effects of his disabling symptoms, stating in relevant part:

> [Mr. Garcia's] allegations of disabling mental symptoms are inconsistent with the mental status examinations documenting his euthymic moods, cooperative attitude, and concrete thought processes. In addition, [Mr. Garcia's] allegations are inconsistent with Dr. Carcache's November 29, 2018 mental status examination . . . documenting [Mr. Garcia's] euthymic mood,

---

[3] The Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

ability to recall 3 words after 5 minutes, ability to perform serial 7s and subtraction, and good judgment.

In addition, [Mr. Garcia's] allegations of disabling symptoms are inconsistent with the evidence of his part-time work at McDonald's since 2013. Further, they are inconsistent with the evidence of his graduation from high school with a regular diploma and his attainment of a driver's license per his testimony. Moreover, they are inconsistent with his reports to Dr. Carcache in May 2016 of working at McDonald's on the weekends, attending Miami Dade College, and going to the gym 2 to 3 times per week.

(R. 25).

Thus, the ALJ provided specific examples of objective medical and non-medical evidence in the record that conflict with Mr. Garcia's subjective complaints regarding his mental limitations. *Id.* The Court finds, therefore, that the ALJ articulated adequate specific reasons supporting his credibility assessment. *See Martin v. Acting Comm'r of Soc. Sec.*, No. 21-11532, 2022 WL 1486387, at *8 (11th Cir. May 11, 2022) ("Here, the ALJ made a clearly articulated credibility finding and pointed to specific reasons for discounting [the claimant's] subjective testimony concerning the intensity and severity of her impairments—namely, that it was inconsistent with the available evidence in the record."). Moreover, the record supports the ALJ's findings.

The record supports the ALJ's finding that Mr. Garcia's daily activities are not consistent with the limitations he claims. For example, despite his allegations of disabling mental symptoms, including difficulty concentrating, understanding, and following instructions, Mr. Garcia stated, according to his Function Report, dated May 7, 2018, that he can read and research, use the computer, watch television and movies, go to the gym, make simple meals, do household chores like laundry and cleaning, and "get along well" with others. (R. 263–270). As the ALJ also pointed out, Mr. Garcia has maintained his part-time

job at a local McDonald's for the past ten years[4] and, although he is unable to drive, he is able to take the bus home. (R. 322). Thus, the ALJ's reasons for discrediting Mr. Garcia's subjective testimony of his disabling impairments are supported by substantial evidence. It is not for this Court to reweigh the evidence or to question the ALJ's credibility determinations.

Accordingly, the Court finds the ALJ properly evaluated Mr. Garcia's testimony, and the ALJ's determination that Mr. Garcia's testimony concerning his disabling symptoms is inconsistent with the record is supported by substantial evidence. Therefore, Mr. Garcia's Motion for Summary Judgment on this ground must also be denied.

### D. *Whether The Commissioner Sustained Her Burden Of Establishing Other Work In The National Economy That Mr. Garcia Can Perform*

Mr. Garcia next argues that the Commissioner failed to sustain her burden of establishing that there is other work in the national economy that Mr. Garcia can perform. Specifically, he avers that the ALJ's RFC assessment is not supported by substantial evidence, and, therefore, the VE's testimony cannot provide support for the ALJ's findings since the hypothetical questions posed to the VE did not comprehensively describe Mr. Garcia's mental impairments, including his autism spectrum disorder. *See* Mot. at 18. That is, Mr. Garcia argues that the ALJ's RFC assessment fails to fully account for the opinions of Dr. Ludwig, the lay evidence of record, or Mr. Garcia's testimony. *Id.*  The Commissioner responds that Mr. Garcia's challenge on this point fails because he has not first shown that additional limitations were needed in the RFC to accommodate his impairments. Resp. at 2 n.1. In his Reply Brief, Mr. Garcia does not specifically address the Commissioner's contention on this point.

---

[4] Notably, Mr. Garcia's supervisor at McDonald's stated that Mr. Garcia "does not require supervision or any accommodations," and he "does not have problems interacting with his co-workers." (R. 272 – Report of Contact).

As discussed above, at step five of the sequential evaluation process, the ALJ considers the claimant's RFC and the claimant's age, education, and work experience to determine if the claimant can make an adjustment to other work. *See* 20 C.F.R. § 404.1520(a)(4)(v). During this step, the burden temporarily shifts to the SSA to show the existence of other jobs in the national economy that the claimant can perform, given his impairments. *Buckwalter*, 5 F.4th at 1321. The ALJ must determine, in light of the Dictionary of Occupational Titles (DOT) and the VE's testimony, "whether jobs exist in the national economy in significant numbers that the claimant could perform in spite of [his] impairments." *Id.* (internal quotation marks omitted).

In order for the VE's testimony to constitute substantial evidence, upon which the ALJ may rely, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Winschel*, 631 F.3d at 1180 (internal quotation marks omitted). While the ALJ need not list "every symptom of the claimant," the hypothetical must provide the VE with a complete picture of the claimant's RFC. *See Ingram*, 496 F.3d at 1270. Thus, the hypothetical must include the claimant's impairments or "otherwise implicitly account for these limitations." *See Winschel*, 631 F.3d at 1181.

Here, although Mr. Garcia has been working part-time at McDonald's since 2013, the ALJ specifically found that he has no past relevant work. (R. 27). Therefore, the burden of proof shifted to the Commissioner to prove that Mr. Garcia is capable, considering his age, education, work experience, and RFC, of engaging in other work that exists in significant numbers in the national economy. In concluding that Mr. Garcia could successfully adjust to other work that exists in significant numbers in the national economy, the ALJ relied on a series of hypotheticals posed to the VE for the purpose of determining whether occupations exist in the national economy that someone with Mr. Garcia's age, education, work

experience, and RFC could perform. (R. 61–65). The VE testified that a hypothetical individual with Mr. Garcia's age, education, past work experience, and RFC can perform medium unskilled work, with a reasoning level of one, as a floor waxer or wall cleaner, and light unskilled work as a housekeeping cleaner. (R. at 28, 63–64). When the ALJ added to his hypothetical limitations of frequent interaction with supervisors and co-workers but occasional interaction with the public, the VE testified that these added limitations would not eliminate the identified jobs. (R. 64). Additionally, when asked in a follow-up to the preceding hypothetical to assume no interaction with the public, the VE testified that the floor waxer and wall cleaner jobs would remain, but that the housekeeping cleaner job would be reduced by 50%. (R. 65).

The VE further testified that if the individual was off task 20% of an eight-hour workday, all jobs identified at a reasoning level of one would be eliminated, and if the individual was off task 20% or more during a workday while working independently or without close supervision, all work would be precluded. (R. 66–67). According to Mr. Garcia, the VE's testimony supports a finding that there is no work in the national economy that he can perform when considering "the limitations flowing from his mental impairments, including his autism spectrum disorder." Mot. at 18.

Mr. Garcia argues that the ALJ's hypothetical questions to the VE regarding other jobs he can perform given his impairments were deficient or incomplete because the hypotheticals failed "to fully account for the opinions of Dr. Ludwig and the lay evidence of record or for Mr. Garcia's credible testimony." Mot. at 18. As discussed above, the ALJ's rejections of portions of Dr. Ludwig's opinion, Mr. Garcia's cousin's letter, and Mr. Garcia's subjective testimony are supported by substantial evidence, and, therefore, the ALJ was not required to include those in the hypotheticals posed to the VE. *See Crawford*, 363 F.3d at 1161 ("[T]he

ALJ [is] not required to include findings in the hypothetical that the ALJ ha[s] properly rejected as unsupported.").

The ALJ determined that Mr. Garcia has a "moderate limitation" in concentration, persistence, and pace (R. 19), and the hypothetical questions posed by the ALJ accounted for these limitations. *See Winschel*, 631 F.3d at 1180. The ALJ also asked the VE to determine what work could be performed by a claimant with the same age, education, and RFC as Mr. Garcia, who is limited to simple, routine, repetitive tasks at a reasoning level of one, and can have frequent interaction with coworkers and supervisors and occasional interaction with the public. (R. 26, 62–64). The ALJ's questions adequately accounted for all of Mr. Garcia's impairments, as determined by the ALJ, and, as set out above, the ALJ's determinations are supported by substantial evidence.

Therefore, substantial evidence supports the ALJ's determination that Mr. Garcia can perform other work that exists in significant numbers in the national economy, and therefore, Mr. Garcia's Motion on these grounds must also be denied.

## VIII.    CONCLUSION

As the ALJ acknowledged, Mr. Garcia undoubtedly has impairments and limitations. While Mr. Garcia may not agree with the ALJ's weighing of the evidence or findings based thereon, the Court's role is limited and does not permit the reweighing of the evidence. The Court has reviewed the ALJ's findings and Mr. Garcia's challenges thereto and finds that the ALJ's findings are supported by substantial evidence and based on the application of the correct legal standards. Therefore, the Court must defer to the ALJ's Decision.

Accordingly, it is hereby

**ORDERED AND ADJUDGED** that

1.      Plaintiff's Motion for Summary Judgment [ECF No. 20] is **DENIED**;

2.      Defendant's Motion for Summary Judgment [ECF No. 22] is **GRANTED**;

3.      The decision of the Commissioner is **AFFIRMED**; and

4.      The Clerk is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 27th day of February

2023.

_____

MELISSA DAMIAN
UNITED STATES MAGISTRATE JUDGE

Copies to:
Counsel of record